**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HERMAN KENT JONES** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **CAROLYN W. COLVIN** | : | **NO. 13-4831** |

**MEMORANDUM OPINION**

Savage, J.                                                                                          June 24, 2014

In this appeal from the denial of his third application for Disability Insurance ("DIB") and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act"), the plaintiff Herman Kent Jones requests review of the Administrative Law Judge's ("ALJ") decision denying him benefits.  He contends that the ALJ failed to properly evaluate the medical evidence concerning his impairments, improperly discredited his subjective complaints of pain, and did not consider the effect of obesity on his functional limitations.

After an independent review of the administrative record, we conclude that the ALJ's decision was supported by substantial evidence.  Therefore, we shall affirm the ALJ's decision.

**Background and Procedural History**

On April 25, 2008, Jones, who was then forty-one, applied for DIB and SSI benefits, alleging disability as of August 1, 2006 due to a back impairment. R. at 90, 92, 97.  On March 18, 2009, following a hearing, the ALJ concluded that Jones was not disabled. R. at 87-99.  The Appeals Council denied the request for review. R. at 83-86.  Jones did not seek judicial review.

On May 12, 2009, Jones filed a second application for DIB and SSI benefits, alleging disability as of March 19, 2009, one day after the denial of his first application. R. at 72.  Again, he claimed he had a qualifying back impairment.  R. at 72.  On April 22, 2010, following a hearing, the ALJ concluded that he was not disabled.  R. at 69-82.  Jones did not seek administrative or judicial review.

On May 24, 2010, Jones filed his third application for DIB and SSI benefits.  R. at 200-10.  He claimed he was disabled as of April 1, 2009.  R. at 200.  As he did in his prior two applications, he alleged he was disabled due to a back impairment.  R. at 222.  After his application was denied, Jones timely requested a hearing.  R. at 157-58.

Following a hearing held on August 10, 2011, at which Jones was represented by counsel, the ALJ determined that Jones had severe impairments, including disorders of the back, residuals of spinal fusion surgery, and obesity.  R. at 28, 30.  She concluded that these impairments did not preclude Jones from performing sedentary work with an option of sitting or standing every thirty minutes, occasional operation of foot controls, and no climbing of ladders, ropes, or scaffolds.  R. at 32.  Relying upon a vocational expert's ("VE") testimony, the ALJ determined that there were jobs available in the national economy that Jones could perform.  R. at 36.  Accordingly, on October 15, 2011, the ALJ found that Jones was not disabled.  R. at 37.

On June 25, 2013, the Appeals Council denied Jones's request for review, making the ALJ's decision final.  R. at 1-3.  Jones then filed this action under 42 U.S.C. § 405(g), seeking judicial review of the Commissioner's decision.

**ALJ Findings**

The ALJ made the following findings in her October 15, 2011 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since April 1, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: disorders of the back, residuals of spinal fusion surgery, and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). The claimant can perform sedentary level work that allows the option of sitting or standing to do the work every thirty minutes, requires no more than occasional operation of foot controls, and never requires the climbing of ladders, ropes, or scaffolds.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant, born on April 29, 1966, was 42 years old on the alleged disability onset date, which is defined as a younger individual age 18-44.  The claimant subsequently attained age 45 and his age category changed to that of a younger individual age 45-49 (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is not disabled,

whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).[1]

### Sequential Evaluation

In making her determination, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920(a).[2]  She found that Jones met his burden at steps one and two.  R. at 30.  At step three, she concluded that Jones did not have an impairment which met or equaled one of the impairments identified in the Listings.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1 (2014) (the "Listings").  She found that Jones's back impairments, in combination with his obesity, did not meet or medically equal the diagnostic criteria of Listing 1.04 because there was no evidence of ineffective ambulation.  R. at 31.

At step four, after considering and analyzing Jones's medical history and records in detail, the ALJ concluded that Jones was unable to perform any past relevant work. R. at 32-34.  In reaching this conclusion, she described Jones's daily activities and his complaints of constant pain.  R. at 32.  She noted that Jones was involved in two motor

---

[1] R. at 30-37.

[2] The five-part test is: (1) whether the claimant is currently employed; (2) whether he is severely impaired; (3) whether the impairment is or approximates a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform a significant number of other jobs in the national economy.  20 C.F.R. § 416.920(a)(4); 20 C.F.R. § 404.1520(a)(4); *Phillips v. Astrue*, 671 F.3d 699, 701 n.1 (8th Cir. 2012); *Rutherford v. Barnhart*, 399 F.3d 546, 551-52 (3d Cir. 2005).

vehicle accidents on March 24, 2007 and March 7, 2009.  R. at 33.  After the first accident, Jones received physical therapy and injections.  R. at 33; 318; 319; 325.  A June 11, 2008 physical exam revealed a normal gait, normal muscle tone and bulk, and full muscle strength throughout all four extremities.  R. at 319.  He complained of pain with lumbar flexion and tenderness to palpation over the lumbar area.  R. at 319.  A September 27, 2008 MRI of the lumbar spine indicated "multilevel lumbar spondylosis."[3] R. at 326.  Electromyogram and nerve conduction studies conducted on December 17, 2008 were normal.  R. at 296-97.  The physician conducting the studies noted that there was "no evidence for lumbar radiculopathy, neuropathy or plexopathy."  R. at 297.  On February 23, 2009, Jones had normal muscle bulk and tone, a normal gait, and negative straight leg raising test results.  R. at 325.  He complained of tenderness to palpation in the lumbar area and pain with the right hip flexion.  R. at 326.

After the second motor vehicle accident on March 7, 2009, an April 16, 2009 CT scan and discography showed two annular tears in the discs.  R. at 310-11; 330-31.  On April 29, 2009, Jones saw a pain management specialist, Dr. Jose, and complained of constant aching pain in the lumbar area.  R. at 323.  Dr. Jose referred Jones to Dr. Foti, a surgeon.  R. at 323.

---

[3] Spondylosis as "a degenerative disease of the spinal column, especially one leading to fusion and immobilization of the vertebral bones."  The American Heritage® Stedman's Medical Dictionary (2002).

On June 5, 2009, Jones underwent spinal fusion and decompression surgery.  R. at 279-80.  On follow-up visits through July 2009, Dr. Foti, the operating surgeon, reported improvement and less pain.  R. at 33; R. at 276;[4] R. at 275.[5]

On September 1, 2009, Jones reported to Dr. Lake, an orthopedic doctor, that his pain "is slowly improving," rating his pain at 8/10.  R. at 274.  The physical exam revealed tenderness over the surgical site, full range of motion of the lumbar spine with discomfort during lumbar flexion, negative seated straight leg raise bilaterally, and 5/5 muscle strength of the lower extremities.  R. at 33, 274.  Dr. Lake prescribed physical therapy.  R. at 274.  On September 30, 2009, Jones reported that he had "good days and bad days," but that physical therapy was going well and he felt an increase in strength.  R. at 273.  On October 28, 2009, Jones reported lower back pain with no improvement.  R. at 272.  He had full range of motion of the lumbar spine with slight discomfort throughout, negative seated straight leg raise bilaterally and an intact neurovascular examination of the lower extremities.  R. at 272.

On October 28, 2009, Dr. Lake noted that although Jones stated he had an interest in returning to work, he still filed for disability.  R. at 272.  Jones requested Dr. Lake to "complete disability forms."  R. at 272.  Dr. Lake "declined" to do so.  R. at 272.  Instead, he referred Jones back to his surgeon, Dr. Foti, for continued care.  Although

---

[4] "[On June 15, 2009, Jones] states that he is feeling better everyday [sic].  He complains mostly of right sided low back pain.  He states his legs feel better.  The numbness in his feet has resolved.  He continues with his back brace.  He is ambulating with a cane.  He is taking Percocet and Skelaxin, which help."

[5] "[On July 13, 2009, Jones] states that he is doing better and has no radicular symptoms.  He states that he is still having some back ache and pain but he is improved from surgery.  He is wearing his brace 24/7.  He is also utilizing his stimulator.  He has been steering clear of anti-inflammatories and smoking."

the record is unclear, it appears that Jones returned to Dr. Foti in January 2010, when Dr. Foti ordered an X-ray.  R. at 287, 307.[6]  He never saw Dr. Lake again.

On January 2010, an X-ray of the lumbar spine revealed "stable post-surgical changes."  R. at 307.  Nonetheless, on May 28, 2010, when he returned to Dr. Jose, Jones reported that the surgery did not help with his pain.  R. at 321.  According to Jones, the pain improved with application of heat and medications.  R. at 321.  At Dr. Jose's recommendation, Jones had an epidural steroid injection on July 6, 2010.  R. at 321-22, 327.  As the ALJ noted, there is no record that he went for a follow-up or ever requested a second injection.  R. at 33.

There was a nine-month gap in Jones's treatment after the July 6, 2010 injection. R. at 262; R. 109-110.  On April 18, 2011, Jones presented at the emergency room, complaining of low back pain.  R. at 364.  When he arrived, he walked with a steady gait.  R. at 371.  A physical exam was unremarkable.  It revealed normal neck, normal neurological findings, normal range of motion of the back, some tenderness in the lower back, but no pain with straight leg raising tests.  R. at 372-73.  Jones left the hospital the same day, ambulating without assistance.  R. at 373.

On May 2, 2011, Jones saw Dr. Chang, a primary care physician, who recommended physical therapy.  R. at 109, 377, 383.  Throughout the course of the physical therapy, Jones's subjective complaints remained the same.  He complained of numbness to the feet, intermittent knee buckling and decreases in function.  *See, e.g.*,

---

[6] According to the disability report form, Jones saw Dr. Foti in April 2010.  R. at 225.  There is no medical record of that visit.  In his disability report form, Jones noted that as of May 24, 2010, he did not see Dr. Foti because Dr. Foti moved and no longer accepted Jones's insurance.  R. at 228.  At the hearing in front of the ALJ, Jones testified that he last saw Dr. Foti in 2010.  R. at 111-12.

R. at 383.   He claimed that pain was aggravated with bending, lifting, prolonged walking, prolonged sitting, stair climbing and sleep positioning.   R. at 383.   He also noted that his medications relieved his symptoms.   R. at 383.   The therapists noted that for the first three weeks Jones tolerated treatments "fairly well."   R. at 385, 386, 388, 390, 394, 396, 398.   In the following two weeks, Jones reported some relief from symptoms after physical therapy.   R. at 400, 402, 404, 406, 408.   Yet, after six weeks of physical therapy, on June 23, 2011, Jones reported that overall symptoms remained the same.   R. at 410.   Although the next four weeks of treatment gave Jones some relief from pain immediately after the physical therapy, R. at 412, 414, 416, 418, 420, 424, 426, 428, on July 27, 2011, the reevaluation report noted no overall improvement in the subjective complaints.   R. at 435.   It also noted that the benefits from physical therapy are "only his reported increases in trunk and [lower extremities] strength."   R. at 435. The physical therapist noted that Jones "may benefit from a hold on [physical therapy] at this time."   R. at 435.

After analyzing and summarizing the record evidence at step four, the ALJ determined that Jones had the residual functional capacity to perform a range of sedentary work that allows an option of sitting or standing every thirty minutes, occasional operation of foot control, and no climbing of ladders, ropes, or scaffolds.   R. at 32.   Given this finding and considering his age, education and work history, as well as the VE's testimony, the ALJ concluded that a significant number of jobs existed in the economy that Jones could perform.   R. at 36.   Thus, she found Jones was not disabled. R. at 37.

**Analysis**

On judicial review, the court determines whether the Commissioner's decision is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence is "'more than a mere scintilla;' it means 'such relevant evidence as a reasonable mind might accept as adequate.'" *Thomas v. Comm'r of Soc. Sec. Admin.*, 625 F.3d 798, 800 (3d Cir. 2010) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)).

To facilitate meaningful judicial review, the ALJ must explain clearly and thoroughly the basis of her decision.  *Barren Creek Coal Co. v. Witmer*, 111 F.3d 352, 356 (3d Cir. 1997) (quoting *Cotter v. Harris*, 642 F.2d 700, 704-05 (3d Cir. 1981)).  The ALJ must discuss what evidence supports her determination, what evidence she rejected, and her reasons for accepting some evidence while rejecting other evidence. *Cotter*, 642 F.2d at 705.

Jones asserts five grounds for remand of the ALJ's decision.  He contends that the ALJ erred in: (1) relying on a treating physician's refusal to complete a disability form as evidence that the treating physician found the claimant not disabled; (2) giving little weight to the opinion of a consultative examiner based upon a finding that the examiner was relying only on subjective complaints when, in fact, he found objective evidence that supported his findings; (3) not properly crediting the plaintiff's subjective complaints of pain despite the lack of medical evidence contradicting the complaints; (4) after finding that the plaintiff had a serious impairment of obesity, failing to consider the effect of that obesity on the plaintiff's limitations at steps four and five of the sequential

process; and (5) misstating the observations of the physical therapists and failing to consider the limitations described by the physical therapists as required by SSR 06-03p. Pl.'s Br. and Statement of Issues in Supp. of Request for Review ("Br.") at 2-3.   We address each argument in turn.

*Treating Physician's Refusal to Complete a Disability Form*

Jones contends that the ALJ improperly inferred that because his treating physician refused to complete a disability form, the doctor was of the opinion that his patient was not disabled.   Br. at 5.   He argues that a "doctor's silence on an issue cannot be said to imply that the doctor has an opinion on the subject."   *Id.*

When a doctor's silence about a claimant's ability to work is subject to competing inferences, no inference should be drawn from that silence.   *See Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).   In this case, Jones's treating physicians did not opine on the issue of disability.

The ALJ mentioned the treating physician's refusal to complete a disability form to explain the absence of an opinion of a treating physician in the record.   *See* 20 C.F.R. § 404.1527(a)(2) (defining medical opinions).   She did not conclude that the refusal to complete the disability forms was tantamount to an opinion that Jones was not disabled.   In the context of discussing opinion evidence, she noted that there is no opinion by a treating physician opining on Jones's ability to perform work-related activities.   In addressing opinion evidence, the ALJ noted as follows:

> As for other opinion evidence, the record contains no information from any treating medical professional indicating the claimant is so disabled as to be unable to perform all work related activities but does include a treating

physician's refusal (exhibit C-3F/page 1) to complete a disability form for the claimant.

R. at 34.

The ALJ correctly determined that no treating physician opined that Jones was disabled.  Jones cannot dispute that the ALJ's observation is consistent with the record. In evaluating the evidence, the ALJ was "entitled to rely not only on what the record says, but also on what it does not say." *Lane v. Comm'r of Soc. Sec.*, 100 F. App'x 90, 95 (3d Cir. 2004) ("Not one of [the claimant's] treating physicians opined that she was unable to work, let alone meet the modest demands of sedentary work.  This lack of medical evidence is very strong evidence that [the claimant] was not disabled . . . .  In fact, none of [the claimant's] treating physicians concluded that she had any work-related functional limitations.  Absent such evidence, [the claimant] cannot establish disability under the Social Security Act.") (internal citations omitted).  The ALJ was presented with conflicting evidence as to disability.  In evaluating the entire record, she correctly found that Jones's treating physician had not weighed in with a disability assessment.

Contrary to Jones's contention, the ALJ did not base her credibility finding on Dr. Lake's supposed silence.  Nor did she consider the doctor's refusal to certify that Jones was disabled to be an "opinion" that he was not disabled.  Instead, she referenced Dr. Lake's refusal to fill out a disability form in the context of the absence of an opinion from any treating physician that Jones was disabled.  Accordingly, the ALJ's references to Dr. Lake's refusal to certify that Jones was disabled do not warrant remand.

*Opinion of a One-Time Consultative Examiner*

Jones contends that the ALJ gave the opinion of Dr. Kennedy, a consultative examiner, too little weight.  Jones was examined by Dr. Kennedy on August 28, 2010.  R. at 335.  In his report, Dr. Kennedy noted Jones's complaints of constant pain, and his medical, social and occupational history.  R. at 335-36.  The results of Dr. Kennedy's physical exam were as follows:

> GENERAL PRESENTATION: Normal.  He has an abnormal posture in that he needs to change position fairly frequently from sitting to standing and sitting to standing [sic] for comfort.  He has a cane and a lumbar brace.  He needs to roll over to move from supine to seated.
>
> NECK AND UPPER EXTREMITIES: Exams are unremarkable.
>
> CARDIVASCULAR, PULMONARY: Exams are unremarkable.
>
> LUMBAR: A slight decrease in range of motion with pain in all motions. He is tender in his bilateral lower lumbar areas . . . .
>
> LOWER EXTEMITIES: Exam shows 5/5 strength on the left and 4/5 on the right with right low back and hip pain.  His gait with his cane is slow and he has a slight drag in his right lower extremity.  Despite this, he does not appear to have foot drop.
>
> NEUROLOGICAL: He has normal sensation in the upper extremities but an equivocal decrease in the right lateral superior thigh and hip.
>
> Faber test causes right lumbosacral/pelvic pain.  Straight leg raising is negative while seated but causes low back pain at 60 degrees with bilateral leg raising when supine.  Strength testing shows 45, 60 and 70 pounds on the right and 50 to 60 pounds on the left . . . .
>
> Range of motion of the upper extremities is normal.  Range of motion of the lower extremities is normal.  Back motion shows only 75 degrees of flexion.  Neck motion is normal.

R. at 337.

In his range of motion chart, Dr. Kennedy reported unremarkable results in the shoulder, elbow, wrist and cervical region of the spine.  R. at 342-43.  He reported some minor limitations in internal and external hip rotation and the lumbar region of the spine. R. at 343.   Despite these objective findings, Dr. Kennedy opined that Jones had "significant limitations on lifting and carrying, walking, standing, and bending and climbing as the result of the back surgeries and mild weakness in the lower extremity." R. at 338.  He opined that Jones could occasionally lift and carry two to three pounds, stand and walk for one to two hours per day with a hand-held assistive device, and sit for four hours.  R. at 340.  Accordingly, Dr. Kennedy concluded that Jones was not physically capable of performing a full range of sedentary work for eight hours a day.  R. at 340.

After summarizing Dr. Kennedy's findings, the ALJ rejected his opinion because it "appears to be based solely upon the claimant's subjective complaints and is not supported by the medical evidence of record, including the consultative physician's own clinical findings."  R. at 34.  She reiterated Dr. Kennedy's findings that Jones had minimal to no limitations.  She further determined that the medical evidence does not support the work-related physical limitations found by Dr. Kennedy.  R. at 34.  For example, Dr. Kennedy opined that Jones could not lift or carry two to three pounds, R. at 340, even though Jones displayed a normal range of motion throughout all four extremities, and examination of his neck and upper extremities was unremarkable.

The ALJ noted that after surgery, Dr. Lake reported normal range of motion with only some tenderness over the surgical site.  R. at 33.  On follow-up visits, Dr. Lake

reported progressive improvement, even though subjective complaints remained the same.  Comparing Dr. Lake's and Dr. Kennedy's observations, the ALJ concluded that Dr. Kennedy's assessment was an "overstatement of the claimant's limitations" and was "wholly unsupported."  R. at 34.  Accordingly, she accorded it little weight.

The weight given a medical opinion depends upon the extent to which it is supported by relevant evidence, "particularly medical signs and laboratory findings," and the extent to which it is consistent with the record as a whole.  20 C.F.R. § 404.1527(c)(3)-(4).  An ALJ may reject a medical opinion that is inconsistent with the record and formed "solely from [the claimant's] reporting of [his] symptoms and . . . conditions."  *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007).

The ALJ was not required to give Dr. Kennedy's opinion controlling weight.  Unlike treating source opinions, consultative examiners' opinions are not entitled to any "special degree of deference."  *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  When there is no controlling treating physician opinion, the consultative examiner's medical opinion is weighed by considering the factors identified in 20 C.F.R. § 404.1527(c)(1) through (6).  These factors include, among others, the examining relationship, the treatment relationship, the supportability of the opinion by relevant evidence, the consistency of the opinion with the record as a whole, and the specialization of the source providing the opinion.  20 C.F.R. § 404.1527(c).

In discounting Dr. Kennedy's opinion, the ALJ provided reasons that are supported by the evidence.  Dr. Kennedy was not a treating physician and examined Jones only once.  In drawing his conclusions, he relied solely on Jones's self-reported

history and subjective complaints.  His opinion was not consistent with the other medical evidence and his own objective findings.

Apparently, giving Jones the benefit of the doubt, the ALJ gave some weight to Dr. Kennedy's opinion that Jones had a few restrictions when she included them in the residual functional capacity assessment.  For example, consistent with Dr. Kennedy's note that Jones had an abnormal posture and needed to change position fairly frequently from sitting to standing, the ALJ's residual functional capacity assessment limits the jobs to a sitting/standing option.  She also limited Jones to sedentary work.

According to the Secretary's regulations,

> [s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

A sedentary job requires no more than approximately two hours of standing or walking per eight-hour work day, and sitting should typically amount to six hours per eight-hour work day.  *See* Social Security Administration, Social Security Ruling No. 83-10.

The ALJ's discounting of Dr. Kennedy's opinion is supported by substantial evidence.  Her decision may not be reversed merely because there is evidence that would support the opposite conclusion or we disagree with it.  *See Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if substantial evidence also would have supported a finding other than the one the ALJ made . . . the district court erred in reversing the

ALJ."); *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988) ("Even if the reviewing court were to resolve the factual issues differently, the Secretary's determination must stand if it is supported by substantial evidence."); *see also Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986). We do not weigh the evidence or substitute our conclusions for those of the ALJ. *See Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

*Subjective Complaints of Pain*

Even though the ALJ must give "great weight" to a claimant's subjective testimony, a claimant's complaints of pain do not alone establish disability. 20 C.F.R. § 416.929(a); *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999); *Green v. Schweiker*, 749 F.2d 1066, 1069-70 (3d. Cir.1984). They must be supported by objective medical evidence of an impairment that could reasonably be expected to produce the claimed level of pain. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1529(a), 416.929(a); *Hartranft*, 181 F.3d at 362. Nevertheless, the absence of direct medical evidence alone is not a ground for rejecting complaints of pain. *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993) (citing *Green*, 749 F.2d at 1071).

As the fact finder, the ALJ may reject, in part or in whole, subjective complaints if she finds them not credible based on other evidence in the record. *See Schaudeck*, 181 F.3d at 433 (citing *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974)); *Plummer*, 186 F.3d at 429-30 (citation omitted); *Mason*, 994 F.2d at 1067-68. Given her opportunity to observe an individual's demeanor, the ALJ's credibility determinations are entitled to great deference and may not be discarded lightly. *See Reefer v. Barnhart*,

326 F.3d 376, 380 (3d Cir. 2003).  When assessing the claimant's credibility, the ALJ is "not free to accept or reject that individual's complaints solely on the basis of [her] personal observations."  *Schaudeck*, 181 F.3d at 433 (citing Social Security Ruling 95-5P).  Rather, an assessment of a claimant's complaints of pain or other symptoms "must contain a thorough discussion and analysis" of the medical and other evidence.  *Id.*

In this case, the ALJ determined that Jones's subjective complaints and his claim that he is unable to work were not credible in light of discrepancies between his assertions and the medical evidence.  R. at 34.  She correctly noted that Jones had not consistently received medical care for his alleged impairment.  *See Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) (holding that the ALJ may discount the claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment).  Jones had not treated with an orthopedic specialist since January of 2010, if not earlier.  He stopped seeing a pain specialist after the July 6, 2010 injection.[7]  When he went to the emergency room nine months later, the findings were unremarkable.  At the hearing, Jones testified that he was not getting treatment at that time because he was seeking a new primary care physician because his previous one did not help him.  Yet, after early 2010, he did not return to his orthopedic specialist, Dr. Lake, or his surgeon, Dr. Foti.  In short, his treatment history was sporadic and contradicted his subjective complaints of disabling pain.

---

[7] Jones testified that he received two injections in 2009.  R. at 114.

The ALJ had a basis for finding that Jones's subjective complaints were not supported by medical evidence.  Physical examinations typically revealed full or almost-full motor strength, normal reflexes, normal sensation, and a normal or almost-normal gait.  Also, there was evidence that Jones got some relief after taking medication and getting physical therapy.  *See, e.g.*, R. at 400, 402, 404, 406, 408, 410, 412, 414, 418, 424.  In sum, the objective medical evidence was inconsistent with Jones's claims of disabling pain and physical limitations.  20 C.F.R. § 404.1529(a).  Thus, the ALJ's credibility determination was supported by substantial evidence.

*Obesity*

At step two, the ALJ found that Jones's obesity was a severe impairment.[8]   At step three, considering Jones's obesity in combination with his other impairments, she determined that his impairments did not equal one of the Listings.  R. at 31.  She noted as follows:

> Although obesity is not an impairment listed in Appendix 1 to Subpart P, 20 CFR Part 404, I have considered any additional and cumulative effects of the claimant's obesity when assessing whether any of the claimant's impairments meet or equal the criteria of a listed impairment (Social Security Ruling 02-1p).  Obesity is often associated with musculoskeletal impairments and the combined effects of both impairments can be greater than the effects of each of the impairments considered separately.  In this case, while the claimant's obesity is considered severe, no listing is met or equaled when its effects are combined with those of the claimant's back impairment.  The claimant's obesity will also be considered in assessing this claim at other steps of the sequential evaluation process (including when determining the claimant's residual functional capacity).

---

[8] Jones has a Body Mass Index ("BMI") score of 32.5.  *See* National Institutes of Health (NIH) BMI Calculator, http://www.nhlbi.nih.gov/guidelines/obesity/BMI/bmicalc.htm (last accessed June 19, 2014).  This places him in the lowest category of obesity, as classified in the NIH Clinical Guidelines on the Identification, Evaluation, and Treatment of Overweight and Obesity in Adults.  *See* SSR 02-1p, 2002 WL 34686281, at *2 (Sept. 12, 2002) (referencing NIH Publ'n No. 98-4083, Sept. 1998).

R. at 31.  Jones contends that the ALJ failed to include obesity among his impairments in determining residual functional capacity.

Although obesity is recognized as "a medically determinable impairment that is often associated with disturbance of the musculoskeletal system . . . [which] can be a major cause of disability . . ." and must be considered in making a residual functional capacity determination,  20 C.F.R. § 404, subpt. P, app. 1, 1.00(Q), it is not itself a listed disability.[9]  It is not defined in the Regulations.  "Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." SSR 02-1p, 2002 WL 34686281, at *6.  In considering whether a claimant is obese, the adjudicator relies on the judgment of a physician who has examined the claimant and has reported his or her appearance or build, height and weight.  SSR 02-1p, 2002 WL 34686281, at *3.

In *Rutherford v. Barnhart*, 399 F.3d 546 (3d Cir. 2005), the Third Circuit held that an ALJ's failure to mention a claimant's obesity does not warrant remand where the claimant has not expressly relied on his or her obesity as a basis for establishing functional limitations during the course of the administrative proceedings, and where he or she offers only a very generalized assertion that his or her obesity makes basic activities more difficult than they would otherwise be.  *Id.* at 552-53.  In contrast, in *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503-04 (3d Cir. 2009), it held that remand was required where the claimant relied on obesity to establish functional limitations, and the

---

[9] *See* 64 F.R. 46122-01 (1999) (deleting Listing 9.09, "Obesity" from the "Listing of Impairments" in 20 C.F.R. subpt. P, app. 1).

ALJ, having found obesity to constitute a "severe" impairment, failed to account for it in determining the claimant's residual functional capacity.

Here, even though the ALJ expressly found that Jones's obesity constituted a "severe" impairment, Jones did not rely on his obesity to establish the existence of functional limitations during the course of the administrative proceedings. When he applied for SSI benefits, he did not list obesity as one of his impairments. R. at 222. At no point did he attribute his back pain to his obesity. Instead, throughout the proceedings, he related that his back impairment had been caused by two motor vehicle accidents. Even at this stage, Jones does not link his obesity with any specific functional limitations. Nor does he specify how his minor Level I obesity would affect the five-step analysis. In sum, the record is devoid of any evidence, medical or otherwise, that Jones's Level I obesity exacerbated his impairments. "[W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments." SSR 02-1p, 2002 WL 34686281, at *6.

None of the doctors, treating or examining, mention obesity. Significantly, none opines that obesity affected his health. Indeed, the only reference to weight was noted by Dr. Foti, on July 13, 2009, when he suggested that Jones should continue to watch his weight. R. at 275. Given that Jones did not claim his weight was disabling and there is nothing in the record that obesity affects his ability to work, the ALJ cannot be faulted for her treatment of obesity.

*Observations of Physical Therapists*

Jones challenges the ALJ's finding that "[i]ndividual [physical therapy] reports consistently and repeatedly note improvement and progress along with relief from symptoms after completion of physical therapy treatments."  R. at 34.  Jones contends that the physical therapy notes show inconsistent progress and transitory improvement. Br. at 26 ("A careful review of the daily reports shows that the ALJ misstates the record. If there was real progress, it seems unlikely that the therapists would recommend that their patient stop with therapy.")

The therapists' observations and Jones's subjective complaints are inconsistent. Jones reported improvement following physical therapy.  R. at 390, 392, 394, 400, 402, 404, 406, 408, 418, 420, 424.   The therapists noted that he had "good tolerance" to exercises without complaints during and after treatment.  *See, e.g.*, R. at 385, 386, 388, 390, 394; *see also* R. at 396, 398, 400, 422.   The notes consistently recorded that Jones had 5/5 lower extremities strength, 4/5 knee extension, and 4/5 hip flexion, with complaints of pain.  R. at 383, 385, 386, 388, 390, 392, 394, 396, 398, 400, 402, 404, 406, 408, 410, 412, 414, 416, 418, 420, 422, 424, 426, 428, 430, 432.   Despite the unremarkable objective findings, Jones continued to claim lack of improvement in June 2011.  R. at 410, 414, 416.  On July 18, Jones rated his pain at 7 out of 10 with minimal relief after therapy.  R. at 428.  Two days later, he reported the same level of pain and no decrease in pain after therapy.  R. at 430.  On July 25, the pain was reported as 8/10 and no decrease in pain post-therapy.  R. at 432.  On July 27, the therapist noted that

Jones would "continue under [the] current plan if advised by [the] referring physician." R. at 435.  The therapist also recommended a pause in physical therapy.  R. at 435.

Significantly, the treatment notes do not constitute treating professionals' opinions or conclusions.  They are records of what Jones reported and what the therapists observed.

Physical therapists are not considered an "acceptable medical source" to "provide evidence to establish an impairment," as defined in 20 C.F.R. § 416.913(a) and 20 C.F.R. § 404.1513(a).  Rather, they are "[o]ther sources," whose opinions the ALJ "may [] use" to determine the severity of a claimant's impairment and how it affects his ability to work.  20 C.F.R. § 416.913(d); 20 C.F.R. § 404.1513(d).  Although statements from a physical therapist may be considered as additional evidence, they are not entitled to controlling weight.  *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 878 (3d Cir. 2005).

The ALJ was not required to afford the therapists' notes significant weight because, for the most part, they simply recite Jones's complaints and do not contain any professional opinion regarding Jones's limitations.  *See Craig v. Chater*, 76 F.3d 585, 590 n.2 (4th Cir. 1996) (noting that a medical source does not transform the claimant's subjective complaints into objective findings simply by recording them in his narrative report); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("Mrs. Valentine's testimony of her husband's fatigue was similar to Valentine's own subjective complaints.  Unsurprisingly, the ALJ rejected this evidence based, at least in part, on 'the same reasons [she] discounted [Valentine's] allegations.'  In light of

our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints . . . it follows that the ALJ also gave germane reasons for rejecting her testimony.").  Accordingly, even if the ALJ did not accurately note Jones's progress, the error was harmless because she was not required to accord weight to those records.

## Conclusion

Based on our independent review of the record, we find that the ALJ's decision was supported by substantial evidence.  Therefore, we shall affirm the Commissioner's decision denying benefits.